CHAUNCEY HOLT & others *vs.* CITY COUNCIL OF
SOMERVILLE.

Middlesex.    Jan. 23. — Sept. 4, 1879.    AMES & SOULE, JJ., absent.

Under the St. of 1874, *c.* 97, giving the right to the city of Somerville to take land
for a public park, and to assess a proportionate share of the cost and expense
upon real estate benefited thereby, and giving the same rights to owners to
surrender their estates as is provided by the St. of 1871, *c.* 382, no surrender can
be made of an estate not abutting on the park; and an estate opposite the park,
and separated from it by a county road, is not an abutting estate.
Where, under the St. of 1874, *c.* 97, part of an estate is taken by a city for a
public park, and a betterment assessment is levied on the remainder, the owner
cannot surrender such remainder, if he has settled for the part taken, and con‹
veyed it to the city by a warranty deed.
Where a statute gives a city the right to take land for a public use, and to assess
a proportionate part of the cost upon estates benefited thereby, and gives in
each case a right of appeal to a jury, a party interested has no constitutional
right to a hearing before the city authorities on the question of the necessity of
taking his land, or on the question whether his land is benefited.
A city, authorized by statute to purchase or otherwise take land for a public park,
may purchase the fee of the land.
It is no objection to the validity of a betterment assessment, that the order levy-
ing it did not receive, in either branch of the city council, two several readings,
as required by the rules of the city council.
A betterment assessment was laid by a city council within the time prescribed
by law; after this time expired, an order was passed by the city council to the
effect that payment of a certain percentage, varying according to locality, of
the sum assessed, within a certain time, should be a discharge, and that the
collector enforce the original assessment after that time.    After the expira-
tion of this time, certain persons whose lands had been assessed filed a petition
for a writ of certiorari to quash the proceedings of the city council.    *Held,*
that the order modifying the original assessment afforded no ground for issuing
the writ.
The St. of 1874, *c.* 97, gave the city of Somerville the right to take land for a
public park, and provided that the city council might, if in its opinion any
real estate in the city received any benefit or advantage from the park, beyond
the general advantages to all real estate in the city, adjudge the value of such
benefit and advantage to any such real estate, and assess upon it a proportional
share of the cost and expense of the park to the extent of one half the adjudged
benefit.    *Held,* that the statute was constitutional.

PETITION for a writ of certiorari to quash the proceedings of
the city council of Somerville, claiming to act under the St. of
1874, *c.* 97, in laying out and constructing a public park in Som-
erville, and in assessing betterments upon the estates of the
petitioners.    Hearing before *Endicott,* J., who reported for the

determination of the full court the case which appears in the opinion.

*H. G. Parker & S. Z. Bowman,* (*S. E. Sewall* with them,) for the petitioner.

*S. C. Darling,* for the respondent.

COLT, J.   By the St. of 1874, *c.* 97, the city of Somerville was authorized to take, by purchase or otherwise, certain described land situate within its limits, or any part thereof, for a public park.   A description of the land taken was required to be filed, within sixty days, in the registry of deeds ; and the city council was empowered to assess, within two years, a proportional share of the cost upon any real estate which, in its opinion, was benefited beyond the general advantage ; but the assessment was in no case to exceed one half of the adjudged benefit.   It further provided that the assessments shall constitute a lien, " and shall be collected and enforced with the same right to owners to surrender their estates, and the same proceedings thereupon, and the same rights of and proceedings upon appeal," as are provided by the St. of 1871, *c.* 382, entitled an act in relation to betterments.

1. The petitioners contend that the proceedings of the city under this act, and the assessments made upon their estates for benefits, are irregular and void, because those who had a right to surrender their lands were deprived of that right, by the failure of the city to give notice to them, either of the proposed laying out, or of the estimate of damages, or of the assessment of betterments.   The St. of 1871, *c.* 382, is referred to in the·act of 1874 as defining the right of surrender and the proceedings thereon.   That statute gives to any person abutting on any street or highway, and liable to assessment for betterments, a right to surrender his estate " at any time before the estimate of damages is made."   See also Sts. 1865, *c.* 159, § 10 ; 1866, *c.* 174, § 8 ; *Dorgan* v. *Boston,* 12 Allen, 223, 241.   The right of surrender is clearly confined to abutters, and it is unnecessary to decide whether sufficient notice was given to them, because it appears, by the answer of the city council, that all persons owning land abutting on the park had, before this petition was filed, released and conveyed the same to the city, unless the estates on the opposite side of certain county roads bounding

the park on two sides are to be regarded as abutting estates. But these last-named estates are not abutting estates; they do not touch the land laid out by the city. The presumption, that land bounded on a highway extends to the centre of the way, does not carry them to the park line, because, by the description and plan filed in the registry of deeds, the park extends only to the side of the street, and the whole of the highway is excluded. *Smith* v. *Slocomb*, 9 Gray, 36. *Boston* v. *Richardson*, 13 Allen, 146. *Philadelphia* v. *Eastwick*, 35 Penn. St. 75. It also appears that all the owners of land actually taken were settled with, and conveyed titles by warranty deeds to the city, except one, whose claim has since been ascertained and paid. These petitioners accordingly had no right of surrender, because either they were not abutters, or had conveyed their abutting estates to the city, and it does not appear that they have suffered injury in respect to this right from any want of notice. *Haskell* v. *New Bedford*, 108 Mass. 208, 213. *Embury* v. *Conner*, 3 Comst. 511.

2. It is contended that the parties assessed were entitled to notice of the intention to levy the assessment, and opportunity to be heard, and that those whose lands were taken were entitled to notice of the taking. But the statute does not require notice either of the taking or of the intention to levy the assessment, and the rights of those whose lands are taken, or whose property is assessed, is amply secured by the opportunity to appeal to a jury if they are dissatisfied. *Allen* v. *Charlestown*, 111 Mass. 123. *Butler* v. *Worcester*, 112 Mass. 541, 555. Upon the question of the necessity of taking private property for public use, parties interested have no constitutional right to be heard. The authority to determine that question is in the state, or in the tribunals to whom the state has delegated the power. The appropriation of the property is an act of public administration, and the form and manner of its performance is such as the Legislature may, in its discretion, prescribe. Denio, J., in *People* v. *Smith*, 21 N. Y. 595, 597. Cooley Const. Lim. 538.

3. It is contended that, as the city was restricted to the taking of land, by purchase or otherwise, for the purpose of a public park, it had no power to purchase anything more than an ease-

ment in the land.  But the purpose and the language of the statute show that it was intended to give the right to purchase the fee, if the city should so elect.  The use of a public park is continuous, unlimited, and inconsistent with the existence and exercise of any private right therein.  The legal title by such purchase became vested in the city, not for its own use in a corporate capacity, but in perpetual trust for the use of all who at any time might enjoy the benefit of a public park.  *Wrentham* v. *Norfolk*, 114 Mass. 555.  The possibility of a reverter, if any exist in this case, is too remote to affect the question of construction.  The statute, so construed, does not violate any constitutional restriction, as an attempt to exercise judicial power, or as authorizing the taking of a greater interest in land than was necessary.  *Dingley* v. *Boston*, 100 Mass. 544.  *Commonwealth* v. *Wilder*, *ante*, 1.  See also *Heyward* v. *Mayor, &c. of New York*, 3 Seld. 314; *Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234.

4.  It is no objection to the validity of the assessment that the order did not receive, in either branch of the city council, two several readings before its passage, as required by the rules of the city council.  It is within the power of all deliberative bodies to abolish, modify or waive their own rules, intended as security against hasty or inconsiderate action.  *Bennett* v. *New Bedford*, 110 Mass. 433.

5.  The assessments now sought to be enforced were not annulled by the subsequent order modifying the same.*  The lands were laid out for a park July 20, 1874; the order of assessment was passed July 17, 1876; the order modifying it was

---

* This order was as follows: " Ordered that, upon payment of the percentage of any betterment assessment levied on account of the public park, as recommended in the report of the joint special committee on the revision of the said assessments, the said assessment shall be discharged, and that the city treasurer and collector be, and he is hereby, instructed to enforce, in manner provided by law, the payment of all assessments levied as aforesaid, and which shall remain unpaid from and after the tenth day of October next." The report of the committee, referred to in this order, recommended that the assessments on estates within certain bounds be discharged by payment of 67½ per cent, those on other estates by payment of 72 per cent, and all assessments on other estates amounting to twenty dollars and upwards by payment of 90 per cent.

adopted July 9, 1877. The power of the city council to make an assessment was exhausted by the original order. That assessment was not treated as invalid by reason of any error or irregularity in the making of it; St. 1871, c. 382, § 2; and the power to make any further assessment was ended by the lapse of two years. The new order was not a new assessment, but only an order that payment of part of the sum assessed within a specified time should be a discharge; and this was accompanied with a direction that the collector enforce the original assessment after that time. The warrant was then in the hands of the treasurer and collector. A valid order of assessment cannot be rescinded at a subsequent meeting, after the warrant has been committed to the city treasurer, and notice given to the owners of assessed estates. *Woodbridge* v. *Cambridge*, 114 Mass. 483. *Blake* v. *Baker*, 115 Mass. 188.

It is a further answer to this point, that the order of July 1877 expired by its own limitation before the filing of this petition, and the petitioners do not appear to have been prejudiced thereby.

6. The petitioners contend that the act is unconstitutional, because it does not limit or define the territory subject to assessment, and because it is otherwise unconstitutional. But the Legislature was not bound to apportion the tax upon all the taxable property in the city. This was a local improvement, the benefits of which were to be unequally distributed upon estates in the vicinity, and it was within the power of the Legislature to place the burden upon the owners of lands in proportion to special benefits received beyond the general advantage. The limits of the locality subject to the burden are thus properly fixed. It is settled " that a statute authorizing the cost of a local improvement to be levied by assessment upon estates benefited thereby, according to the judgment of the municipal authorities in the first instance, and allowing to any party aggrieved by their estimate the right to have it revised by a jury, is within the constitutional power of the Legislature." *Butler* v. *Worcester*, 112 Mass. 541, 555, and cases cited. See also *Howell* v. *Buffalo*, 37 N. Y. 267; Cooley on Taxation, 110.

7. The only other constitutional objection relied on at the argument was, that the assessments required by the act could

not be proportional or reasonable within the requirements of the Constitution of the Commonwealth; because, among other reasons, they were local assessments for a public improvement. The act provides that a sum not exceeding one half of the benefit and advantage beyond the general advantages to all the real estate in the city shall be assessed proportionally on the real estate which the city council shall adjudge to be so benefited. The limits of the locality subject to the burden are fixed with reference to these special benefits, and the entire expense is divided between the city and the parties receiving such benefits. The rule of apportionment is uniform throughout the district, and is intended to promote entire equality. The principle of taxation here adopted has been constantly applied in reference to sewers, sidewalks, highways, bridges, and other local improvements, and, under the decisions of this court, the power here exercised is not open to constitutional objection, in the absence of anything in the record to show that its operation in this instance was unequal and unjust. *Butler* v. *Worcester*, above cited. *Dorgan* v. *Boston*, 12 Allen, 223. *Howe* v. *Cambridge*, 114 Mass. 388. *Salem Turnpike* v. *Essex*, 100 Mass. 282. *Goddard, petitioner*, 16 Pick. 504. *Jones* v. *Aldermen of Boston*, 104 Mass. 461.

In the exercise of the right of eminent domain the power to take private property for a public park is not open to question. There are considerations affecting the health and comfort of a dense population, which the Legislature in such cases may well regard as sufficient to create the public necessity. Its judgment as to the existence of the exigency, when fairly exercised, is not to be revised by the courts. Such a necessity affects a large portion of the community, and cannot ordinarily be met except by the power to take private property, the cost of which, in part, at least, may be imposed upon those who are specially benefited, when that benefit is in part local. This has been often held in other states. *Owners of Ground* v. *Mayor, &c. of Albany*, 15 Wend. 374. *Heyward* v. *Mayor, &c. of New York*, 3 Seld. 314. *In re Central Park Commissioners*, 50 N. Y. 493. *In re Washington Park Commissioners*, 52 N. Y. 137. *Root's case*, 77 Penn. St. 276. *Hammett* v. *Philadelphia*, 65 Penn. St. 146. *County Court of St. Louis* v. *Griswold*, 58 Misso. 175. *In re Central Park Commissioners*, 63 Barb. 282. *People* v. *Salomon*, 51 Ill. 37.

All the points relied on by the petitioners in the argument have thus been considered, in the order in which they were presented. And the conclusion is, that "the furtherance of justice and the regular execution of the laws" do not require that a writ of certiorari should issue.          *Petition dismissed.*