HENRY O. SAWYER & others *vs.* COMMONWEALTH.

Worcester.　　October 1, 1902. — October 31, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Metropolitan Water Supply Act. Constitutional Law. Words,* "Property."

A person whose established business on land in the town of West Boylston was decreased in value by the carrying out of the metropolitan water supply act, St. 1895, c. 488, within the provisions of § 14, is not a person "whose property is taken under the right of eminent domain, or entered upon or injured by the taking of said water" within the meaning of § 15 of that act and therefore is not given a right to have his damages determined by a jury. BARKER, J. dissenting, on the grounds that § 15 gives the water board the right to a jury in every case and so should be construed to cover the cases of all persons aggrieved by a decision of commissioners appointed under § 14, and that liberally construed the words a person whose property is "injured by the taking of said

water " include a person whose business is decreased in value by the carrying out of the act.

*Semble,* that the diminution of the value of a business by taking under right of eminent domain the land on which the business is carried on and the adjoining land where customers dwell is not an injury for which the constitution requires compensation to be made.

PETITION, filed June 15, 1899, of copartners doing business under the firm name H. O. Sawyer and Company, alleging that on April 1, 1895, the petitioners owned an established business of dealers in general merchandise and of furnishing undertakers on land in the town of West Boylston, and that their business had been decreased in value and destroyed by the carrying out of St. 1895, c. 488.

Commissioners appointed under the statute assessed the damages of the petitioners at $3,250 including interest to the time of filing the report. The petitioners, being dissatisfied with the determination of damages made by the commissioners, filed an application claiming a trial by jury to determine their damages. The case came on to be heard before *Hammond,* J., on three motions, one by the petitioners for a trial by jury, another by the petitioners to recommit the report of the commissioners to them for further consideration, and another by the Commonwealth for the acceptance of the report of the commissioners; and after hearing, and by agreement of the parties, the justice reserved for determination by the full court the question whether the petitioners might claim a trial by jury, without prejudice to the rights of the parties to press the other two motions if the full court should determine that the petitioners were not entitled to claim a trial by jury, the petitioners waiving their motion to recommit, if entitled to a trial by jury.

*A. P. Rugg,* for the petitioners.

*H. Parker,* Attorney General, for the Commonwealth.

HOLMES, C. J.   This is a petition for the determination of damages caused by a decrease in value of the petitioners' business, in consequence of the carrying out of the metropolitan water supply act. St. 1895, c. 488, § 14. After the decision in *Sawyer* v. *Metropolitan Water Board,* 178 Mass. 267, the case was referred to a commission upon the present petition, and the petitioners, being dissatisfied with the determination, again claim a trial by jury — this time under § 15 of the act. The

material words are as follows: " Said water board, or any persons whose property is taken under the right of eminent domain, or entered upon or injured by the taking of said water, if dissatisfied with any determination of damages made by any commission, may . . . claim a trial by jury," etc. The question is whether the petitioners come within these words, and have the right which they claim.

A majority of the court is of opinion that the petitioners are not entitled to a jury. If indeed the loss which they have suffered were within the protection of the Constitution, there would be the strongest reason for construing the statute as giving them whatever rights the Constitution secures, (compare *Salem Turnpike & Chelsea Bridge Corp.* v. *Essex,* 100 Mass. 282, 286, 287; Gen. Sts. c. 48, commissioners' note; *Bauman* v. *Ross,* 167 U. S. 548, 593; Lewis, Em. Dom. 2d ed. § 311,) but it hardly would be contended that the Constitution is concerned. It generally has been assumed, we think, that injury to a business is not an appropriation of property which must be paid for. There are many serious pecuniary injuries which may be inflicted without compensation. It would be impracticable to forbid all laws which might result in such damage, unless they provided a *quid pro quo.* No doubt a business may be property in a broad sense of the word, and property of great value. It may be assumed for the purposes of this case that there might be such a taking of it as required compensation. But a business is less tangible in nature and more uncertain in its vicissitudes than the rights which the Constitution undertakes absolutely to protect. It seems to us, in like manner, that the diminution of its value is a vaguer injury than the taking or appropriation with which the Constitution deals. A business might be destroyed by the construction of a more popular street into which travel was diverted, as well as by competition, but there would be as little claim in the one case as in the other. See *Smith* v. *Boston,* 7 Cush. 254; *Stanwood* v. *Malden,* 157 Mass. 17. It seems to us that the case stands no differently when the business is destroyed by taking the land on which it was carried on, except so far as it may have enhanced the value of the land. See *New York, New Haven, & Hartford Railroad* v. *Blacker,* 178 Mass. 386, 390.

We believe that what we have said is in accord with the general understanding of the profession, although the cases sometimes cited for the proposition may not have gone far enough to decide it. *Whitman* v. *Boston & Maine Railroad*, 3 Allen, 133, 142. *Edmands* v. *Boston*, 108 Mass. 535, 549. *Cobb* v. *Boston*, 109 Mass. 438, 444. *Maynard* v. *Northampton*, 157 Mass. 218. *Williams* v. *Commonwealth*, 168 Mass. 364, 366. *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386, 392. See *Stadler* v. *Milwaukee*, 34 Wis. 98; *Coster* v. *Mayor of Albany*, 43 N. Y. 399; *Petition of Mount Washington Road Co.* 35 N. H. 134, 147; *Moses* v. *Sanford*, 11 Lea, 731; *Fuller* v. *Edings*, 11 Rich. L. (S. C.) 239; *Eddings* v. *Seabrook*, 12 Rich. L. 504; *Ricket* v. *Metropolitan Railway*, L. R. 2 H. L. 175; *Metropolitan Board of Works* v. *McCarthy*, L. R. 7 H. L. 243; Lewis, Em. Dom. (2d ed.) §§ 147, 487. See also *Butchers' Slaughtering & Melting Association* v. *Commonwealth*, 169 Mass. 103, 118.

Assuming that the petitioners have no right under the Constitution, we have only to construe the statute in a natural way. The words which we have cited seem to us inapt to give the right which the petitioners claim. Their business is not "taken under the right of eminent domain," or alleged to be. It could not be "entered upon." It is not "injured by the taking of said water." Its value is decreased by the carrying out of the act, — that is, we presume, by the occupation of the land where it was carried on and the adjoining land where customers dwelt, — matters quite different from those mentioned. Their business is not "property" within the meaning of the act, unless it be held that the statute gives it the character of property by providing compensation and thereupon in § 15 uses the word in a looser and broader sense than that in which it had used it before. In §§ 12, 13, "property" seems to be used with what may be called its constitutional meaning, as was intimated in *Sawyer* v. *Metropolitan Water Board*, 178 Mass. 267, 270. Moreover we may notice for what it is worth that the remedy given to the petitioners by § 14 is to have their damages determined in the manner "hereinbefore" provided. That which they claim is provided thereinafter in § 15. It seems to us that the provision relied upon plainly corresponds to the first part of § 14 and has

nothing to do with the petitioners, who come in by an after clap at the end of the section. The statute has provided for ordinary constitutional rights in §§ 12, 13, including a jury trial. Then in § 14 it gives a commission to certain owners of real estate taken or injured by the taking of the waters of the Nashua River, or directly or indirectly decreased in value. It will be seen how closely related the words of § 15 are to the rights thus given. The rights dealt with are constitutional rights or very near to such, and the jury is preserved. But when the statute did an act of supererogation, however just, it did not enhance its gratuity by leaving it to be determined by a tribunal not peculiarly adapted to deal with the problems involved. It certainly did not do so with any clearness, and the petitioners' rights must be confined to what the statute distinctly says.

*Motion denied.*

BARKER, J. I am unable to agree with the opinion of the court. In my opinion it was the intention of the Legislature by St. 1895, c. 488, § 15, to give all parties aggrieved by the decision of a board of commissioners appointed under § 14 of the statute a right to claim a trial by jury to determine their damages. The metropolitan water board clearly has this right in every instance, whatever may be the nature of the claim against the Commonwealth, and it is not to be presumed that the Legislature gave to the representatives of the Commonwealth the privilege of revising the award of the commissioners by a jury and denied that privilege to the adverse party to the litigation. Further, I think that the words of the statute "any persons whose property is taken under the right of eminent domain, or entered upon or injured by the taking of said water" should receive a liberal construction in favor of the subject whose property is injured, and that within the meaning of § 15 any person whose property is injured by the operations carried on under the authority of the statute is a person whose property is "injured by the taking of said water."